UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24153-CIV-GAYLES

MARIE COLES,
        Plaintiff,

v.

BANK OF AMERICA, N.A.,
        Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Bank of America, N.A.'s Motion and Memorandum in Support by Defendant Bank of America, N.A., to Dismiss Plaintiff's Third Amended Complaint ("Motion") [ECF No. 61]. Defendant argues, *inter alia*, that the Third Amended Complaint [ECF No. 57] should be dismissed because this Court has no subject matter jurisdiction over Plaintiff Marie Coles's claims under the *Rooker-Feldman* doctrine. The Court has reviewed the Motion, the parties' submissions, the record, and the applicable law. For the reasons that follow, Defendant's Motion is granted.

### I. BACKGROUND[1]

#### A. The Home Affordable Modification Program

This case revolves around Defendant's alleged scheme to defraud millions of homeowners in the wake of the 2008 financial crisis. Following the stock market crash, Congress allocated billions of taxpayer dollars to newly-created programs in exchange for the recipients' agreement

---

[1] For purposes of Defendant's Motion, the Court accepts as true all facts in the Third Amended Complaint, save for the jurisdictional facts, which Plaintiff is required to prove as the Supreme Court explained in *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). *See infra* pp. 4–5.

1

to implement certain congressionally-specified mechanisms designed to lessen the impact of the financial crisis on every-day Americans.

The Home Affordable Modification Program ("HAMP") was intended to help borrowers keep their homes. To receive federal funds from HAMP, Defendant agreed to use "reasonable efforts" to help homeowners refinance their mortgages. The program worked as follows: a borrower would contact Defendant and request to refinance her loan. Defendant would screen her file and determine if she qualified. After receiving pre-approval (known as a HAMP Loan Workout Plan), the borrower entered a three-month trial phase during which she would make lower monthly mortgage payments and simultaneously submit financial paperwork to obtain a permanent modification. If payments were timely made and the paperwork was approved, the borrower's mortgage would be permanently modified. After a few years of compliance with the modified mortgage rate, Defendant could slowly increase the interest rate in anticipation of the economy's revival. Defendant received "incentive payments" from the federal government for every homeowner who received a HAMP modification.

Over the past few years, several lawsuits have been filed claiming that Defendant fraudulently operated its HAMP program in order to retain the incentive payments and profit off the borrower's losses. These lawsuits are bolstered by numerous whistleblower affidavits. In one such case, Defendant paid back one billion dollars of taxpayer money. *See United States v. Bank of America, N.A., et al.*, No. 1:11-cv-03270 (E.D.N.Y. 2014).

### B. Factual History

In 2002, Plaintiff executed a mortgage and note for her home in Miami in the amount of approximately $80,000.00. Plaintiff's loan was refinanced in 2004 and then again in 2006. By that point, Defendant serviced her mortgage. In March 2009, Plaintiff reached out to Defendant and

requested a HAMP modification. In June or July of the same year, Defendant's loan representative advised her to stop making her regular mortgage payments because HAMP eligibility required that a borrower be in default. Plaintiff accordingly stopped making her payments and defaulted. Plaintiff received a letter from Defendant stating that she was "approved" for the modification in August 2009 and began making trial payments that month.

Plaintiff then submitted financial documents in pursuit of a permanent modification. She received a letter from Defendant confirming their receipt on November 30, 2009. Shortly thereafter, Defendant told Plaintiff that some of the documents were "missing or incorrect." Plaintiff resubmitted them less than a month later. Defendant found another issue with them. Plaintiff ultimately resubmitted her documents at least six different times in response to Defendant's enquiries about lost, missing, or incorrect documents. During this time, Defendant's representatives continued to advise her to stay in default.

Because of how long it took to process her paperwork, Plaintiff's application was never approved for a permanent modification. Despite this, she made six trial payments of $967.50 on Defendant's instruction. Plaintiff also alleges that during this time Defendant conducted illegal "property inspections" on her house and charged her fees for each one. Plaintiff alleges that Defendant knowingly deposited her trial payments into a separate account, one not tied to her mortgage, so that Defendant could keep those funds for its own profit. And because Defendant did not apply those payments to her account, Plaintiff remained in default.

Defendant ultimately foreclosed on Plaintiff's home on February 10, 2014. As part of the foreclosure, a judgment in the amount of $329,000.05 was entered against Plaintiff in state court. Plaintiff now contends that Defendant's loan officer lied to her in the initial conversations about her HAMP eligibility, application process, and foreclosure period, and that Defendant intentionally

lost her documents and delayed her application so that she would lose her home. Plaintiff claims that Defendant profited from her losses by keeping the trial payments and inspection fees and foreclosing on her home. Finally, Plaintiff asserts that she had no way of knowing about Defendant's scheme before her lawyers described the lawsuits against Defendant.

### C. Procedural History

Plaintiff's Third Amended Complaint, filed on August 22, 2018, asserts claims of (1) common law fraud – Count I and (2) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.01, *et seq.* – Count II. [ECF No. 57]. Plaintiff seeks damages for (1) loss of funds paid to Defendant in the form of unapplied trial payments, (2) fraudulent inspections, (3) costs incurred for repeated attempts to send in her HAMP application, and (4) loss of equity and future equity in the home. [*Id.* ¶ 105]. Defendant filed its Motion to Dismiss on September 5, 2018. [ECF No. 61]. The Motion is now ripe for review.

## II. LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual challenge to the complaint.[2] *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *Id.* at 1251. Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[3] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings,

---

[2] Defendant raises several arguments in its Motion. Because the Court agrees that it lacks subject matter jurisdiction over this case pursuant to the *Rooker-Feldman* doctrine, it will not address the remaining arguments.

[3] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

4

and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Here, Defendant has advanced a factual attack on Plaintiff's Third Amended Complaint because it contends that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See, e.g.*, *Christophe v. Morris*, 198 F. App'x 818 (11th Cir. 2006) (per curiam) (affirming a district court's decision to dismiss the plaintiff's complaint where the district court had considered *Rooker-Feldman* as a factual attack on its subject matter jurisdiction). Accordingly, this Court may properly consider evidence outside the pleadings in determining whether the Third Amended Complaint should be dismissed.

## III.   DISCUSSION

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam).[4] The doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic*

---

[4] There is no procedural bar to the application of the *Rooker-Feldman* doctrine here. The state foreclosure judgment was entered on February 10, 2014; Plaintiff did not appeal; and the present federal action was not filed until November 13, 2017. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 208, 284 (2005); *Nicholson v. Shafe*, 558 F.3d 1266, 1276 (11th Cir. 2009).

*Indus. Corp.*, 544 U.S. 280, 284 (2005). "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Id.* at 291 (internal citation omitted). The doctrine bars federal claims raised in the state court and claims "inextricably intertwined" with the state court's judgment. *See Feldman*, 460 U.S. at 482 n.16. "A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or [if] it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Casale*, 558 F.3d at 1260 (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)) (internal quotation marks omitted); *see also Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010) (per curiam).

### A.  Count I – Common Law Fraud

The Court finds instructive the reasoned analysis of Judge Altonaga in a virtually identical case. In *Captain v. Bank of America, N.A.*, plaintiffs executed a HAMP Loan Workout Plan after falling behind in their mortgage payments. No. 18-60130-CIV, 2018 WL 5298538, at *1 (S.D. Fla. Oct. 25, 2018). They were then "approved" and began making trial payments. *Id.* Plaintiffs were repeatedly told, though, that their HAMP application documents and payments were "not received." *Id.* Ultimately, their home was foreclosed upon. *Id.*

Judge Altonaga held that the court lacked jurisdiction under *Rooker-Feldman* for two reasons.[5] First, she found that plaintiffs had constructive notice of fraud before the foreclosure judgment was entered. *Id.* at *5. Underlying her decision was that plaintiffs were aware of the

---

[5] The case before Judge Altonaga was decided at summary judgment. Although the instant case proceeds on a Motion to Dismiss, the legal issue and analysis presented is the same because *Rooker-Feldman* is a jurisdictional bar. *See Rance v. D.R. Horton, Inc.*, No. 07-80402-CIV, 2009 WL 10668926, at *3 (S.D. Fla. Aug. 11, 2009), *aff'd,* 392 F. App'x 749 (11th Cir. 2010).

"irregularities" in the process: they were "approved" for a HAMP modification and had repeatedly submitted HAMP documents—and payments—but were told that nothing was received. *Id.* As such, "[p]laintiffs had a reasonable opportunity to raise their fraud claim" in the state court proceedings and were barred from doing so in federal court. *Id.* at *6. Second, Judge Altonaga held that plaintiffs' fraud claim was inextricably intertwined with the foreclosure action. *Id.* at *7. Judge Altonaga found that fraud was an equitable defense to foreclosure, which if raised before the state court would have likely changed its result. *Id.* Judge Altonaga also found that the damages, which sought compensation for the lost house and the costs spent pursuing HAMP modifications, were intertwined with the state court judgment because they "would effectively nullify the state court judgment and necessarily hold that the state court wrongly decided the issues." *Id.* at *7 (citing *Casale*, 558 F.3d at 1260) (internal quotations omitted).

The parties here have raised identical arguments. Defendant cites a litany of federal cases—each of which "dismiss[es] actions where plaintiffs were, in reality, challenging state-foreclosure judgments"—and argues that Plaintiff's claims are similarly inextricably intertwined with the state court judgment. *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1320 (S.D. Fla. 2011). Plaintiff counters that *Rooker-Feldman* does not apply because (1) she was unaware of the fraud at the time of the state court proceedings and judgment and (2) her requested damages would not disturb the state court judgment.

First, the Court finds that Plaintiff had constructive notice of her fraud claim because she was aware of the irregular events prior to the state court judgment. Specifically, Plaintiff was aware of her own six modification payments and her repeated attempts to send Defendant her financial paperwork in response to its enquiries about lost, missing, and/or incorrect documents. *Casale*, 558 F.3d at 1260; *Figueroa*, 766 F. Supp. 2d at 1325–26. Thus, like the plaintiffs in *Captain*, she

"should have known of the basis of [her] fraud claim" at the time of the state court judgment. 2018 WL 5298538, at *5.

Second, the Court finds that Plaintiff's suit is inextricably intertwined with the state court judgment. Plaintiff's fraud claim would have constituted an equitable defense to foreclosure before the state court. *See id.* at *6 (citing *Najera v. NationsBank Tr. Co., N.A.*, 707 So. 2d 1153, 1155 (Fla. 5th DCA 1998)). Had she raised it at that time, she may not have lost her home. *Id.* This Court cannot retroactively provide relief for her failure to do so.

Plaintiff also seeks damages that would "effectively nullify the state court judgment and necessarily hold that the state court wrongly decided the issues." *Id.* at *7 (citing *Casale*, 558 F.3d at 1260); *see also Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822, 825 (11th Cir. 2015) (per curiam) ("The inquiry is whether either the damages award would annul the effect of the state court judgment or the state court's adoption of the legal theory supporting the award would have produced a different result."), *cert. denied Nivia v. Aurora Loan Servs., LLC*, 136 S. Ct. 909 (2016). Plaintiff seeks compensation for lost equity and future equity in the house, HAMP payments, and inspection fees. These are identical to the damages sought and rejected in *Captain*. 2018 WL 5298538, at *7. Here, as there, success on the merits would financially restore her loss—which, for practical purposes, would void the result that the state court reached.

Plaintiff tries to dodge this bullet by arguing that *Rooker-Feldman* does not bar a federal claim simply because it may yield findings inconsistent with a state court judgment. *See Exxon*, 544 U.S. at 293 (noting that jurisdiction exists "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [s]he was a party" (internal quotations omitted)). Plaintiff's claims do not fit into this exception because such cases are factually distinguishable. In *Arthur v. JP Morgan Chase Bank*, for example,

plaintiff sought money damages "for alleged criminal and fraudulent conduct in the *generation* of foreclosure-related documents"—the physical creation of fraudulent documents used to foreclose on the home. 569 F. App'x 669, 675 (11th Cir. 2014) (emphasis in original). No such allegation exists here. Plaintiff also does not seek damages based on Defendant's wrongful conduct during the state court proceedings, *see Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014), or claim a broader injury emanating from the state court judgment, *see Nero v. Mayan Mainstreet INV 1 LLC, et al.*, No. 6:14-cv-1363-Orl-40TBS, 2014 WL 12610668 at *11–12 (M.D. Fla. Nov. 13, 2014) (asserting RICO claims based on fraudulent mortgage assignments).

As Plaintiff seeks solely to restore her financial losses, the Court concludes that a judgment in her favor would necessarily annul the state court judgment. The suits are therefore inextricably intertwined.

### B.  Count II – Florida Deceptive and Unfair Trade Practices Act

The Court further finds that *Rooker-Feldman* bars Count II, Plaintiff's claim for violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.01, *et seq.* ("FDUTPA"). The Eleventh Circuit squarely addressed this issue in *Nivia v. Nation Star Mortgage, LLC*, holding that a FDUTPA challenge to deceptive trade practices of failing to modify a loan and denying fair opportunities to cure a default "effectively amounted to an equitable defense to the foreclosure[] and the adoption of that theory would have produced a different result in state court." *Captain*, 2018 WL 5298538, at *6 (citing *Nivia*, 620 F. App'x at 825). Had Plaintiff raised her allegations of fraudulent lending practices—of which she had constructive notice at the time of the state court judgment—she may not have lost her home. But "[b]y failing to raise [her] claim in state court[,] [she] forfeit[ed] [her] right to obtain review of the state court decision in any federal court." *Nivia*, 620 F. App'x at 825 (citing *Feldman*, 460 U.S. at 482 n.16). And now, any review of her argument

9

on the merits could end with a result that the state court entered a legally invalid judgment, which the Court cannot allow. *Id.*

\*     \*     \*

Accordingly, the Court finds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and must be dismissed for lack of subject matter jurisdiction. *See generally Flournoy v. Gov't Nat'l Mortg. Ass'n*, 156 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016).

### IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Motion and Memorandum in Support by Defendant Bank of America, N.A., to Dismiss Plaintiff's Third Amended Complaint [ECF No. 61] is **GRANTED**. Plaintiff's Third Amended Complaint [ECF No. 57] is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

All pending motions are **DENIED AS MOOT**.

The Clerk is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of May, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE